Turley, J.
delivered the following opinion of the court.
On the 12th day of January, 1827, Wm. T. Hughlett made and published his last will and testament, 'by which (after specific legacies) he disposes of the residuum of his estate in the following manner: “All the balance of my estate,'both real and persona], of every kind and description whatsoever, and all debts, dues and equities of what kind soever, that is not already disposed of, I will and require that my executors should *461 lake and convert into money immediately, to the best advantage, and thereupon to pay and discharge all just demands that may hereafter arise against me; and after that is done, to pay to the legatees their distributive shares equally. And should it so happen, that any of the legatees, who have already received real or.personal estate bequeathed to them, should lose the same by older or interfering claims; then my executors are to make the deficiency good to them out of the funds of the real andpersonal estate above required to be sold, if there is enough so to do.”
This will was proven at the April sessions of the County Court of Hickman, 1827, by Thomas D. Porter and William H. Hughlett, the executors, who entered into bond, with Joel Walker and John S. Russwurm, to the Governor of the State for the time being, conditioned' as follows:
“The condition of the above obligation is such, that whereas the above bounden Thomas D. Porter and Wm. H. Hughlett, being appointed executors of the last will and testament of Wm. T. PTughlett, deceased, and now qualified as such according to law, do make or cause to be made a true and perfect inventory of all and singular the goods and chattels, rights and credits of the deceased, which have or shall come to the hands, knowledge or possession of the said Thomas D. Porter and Wm. H. Hughlett, or into the hands or possession of any person or persons for them, and the same so made, do exhibit on oath to the court of the county aforesaid within ninety days from the date of these presents; and the same goods and chattels, rights and credits of the deceased, at the time of his death, or which at any time hereafter, shall come into the hands or possession of the said Thomas D. Porter and Wm. H. Hughlett, or into the hands or possession of any person or persons for them, do well and truly administer according to law, and surrender up such legacies to the persons to whom they are bequeathed agreeably to the last will and testament of the deceased, and further do make, or cause to be made, a true and just account of said administration within two years after the date of these presents, and all the rest and residue of said estate, which shall be found remaining upon said executors’ account, *462 the same having been first examined and allowed by the court of said county, shall deliver and pay unto such person or persons respectively to which the same shall be due agreeably to the act of assembly in such cases made and provided, then this obligation to be void and of no effect, otherwise to remain in full force and virtue.”
Thomas D. Porter and William H. Hughlett, the executors, having thus proven the last will and entered into bond, proceeded to administer the estate, and to perform the trust imposed upon them; a joint inventory was returned by them on the 9th of April, 132*7, which specifies as the property of the estate, one thousand acres of land in Hardeman county, Tennessee, six hundred and forty acres of land in Hardeman county, Tennessee, out of which the locator is to have four hundred acres, five hundred acres of land in Obion county, Tennessee, one note on Elias Jones, Jr., $5 62£, Wm. Chelton’s receipt for notes for collection, $57 62¿. They continued thp joint performance of the duty they had thus taken upon themselves, till some.time in the autumn of the year 1837, when Thomas D. Porter died. During this period, all the lands of the estate, or the greater part of them, were sold by them under the provisions of the will, and the money received by one or both. Nothing appears to have been done by the surviving executor afterwards.
On the 19th of September, 1839, this bill was filed by John Hughlett, one of the legatees and devisees under the will, against Wm. H. Hughlett, the surviving executor, the executors of Thomas D. Porter, deceased, and the other legatees and devisees, seeking an account of the administration of the estate, and the execution ofthe trust under the will of Wm. T. Hughlett, deceased, against the executors and their sureties.
The most difficult and important questions presented for the consideration of the court, are questions of law, arising out of the construction of the liabilities of -the executors, as administrators of the personal estate of the deceased, and as trustees for the sale and distribution of his real estate, under the will, and the consequent liability of their sureties thereon.
It is contended for the sureties: 1st. That as the bond of the *463 executors is joint, they are to be held jointly responsible for each other, for any liability arising under it, and are to be charged as principals, responsible each for each to the sureties, and that as long as either of them are able to make good any defalcation, for which they are liable under the bond, he shall be so held in preference to the sureties.
This proposition is too plain to admit of dispute. The exe-cutory might have given separate bonds, and thereby have been held separately liable. But this they have not done, but have chosen to enter into a joint bond, and the necessary consequence is, that the sureties are bound for them jointly and not individually and separately.
2. It is contended for the sureties, that they are not bound under the bond for the performance of the trust reposed in the executors to sell the lands of the testator, and appropriate the proceeds to the payment of his debts, and to the legateeju^g der the will.
' . This is a much graver question, and one worthy <|f ation. It may be reduced to this simple proposition!: sureties of an executor responsible for the proceea/J devised to be sold by him? The solution of this qif pends upon the nature of his duties and re'sponsibili?ífe¿ under such a devise, and how and where he is tobe held accotmtUT for their performance.
In order to arrive at a correct understanding upon this subject, it will become necessary to enquire; 1st. How it is adjudged by the common law. And 2d. What changes, if any, have been effected in relation thereto by statutory provisions of the State of Tennessee.
The duties of an executor and administrator, in relation to the administration of goods and chattels, rights and credits, are the same, with the exception, that administrators, after the payment of debts, are bound to distribute the surplus, according to the statutes of distribution; but the executors must pay specific legacies, in addition to debts, before distribution. An executor, as such, has no more right to interfere with the real estate of his testator, than has the administrator with that of his intestate, unless he be authorized so to do, by express power *464 delegated to him in the will. An executor .then may act in a double capacity, viz, as administrator of the personalty, and as trustee executing a power. It is then necessary in this branch o'f the subject, to treat of his duties and responsibilities in both these capacities.
In ancient times, if a man died without making any disposition of his goods and chattels, the King as parens patriae seized them, to the intent, that they should be preserved and disposed of for the burial of the deceased, the payment of his debts, to advance his wife and children, if he had any, if not, those of his blood. Afterwards the Crown, in favor of the Church, invested the Prelates with this branch of the prerogative; for it was said, none could be found more fit to have such care or charge of the transitory goods of the deceased, than the Ordinary, who all his life had the care and charge of his soul. This trust was abused by the Ordinary, who under the name of pious uses, took the whole residuum of the deceased’s estate, after the paries raiionahiles of the wife and children had been deducted, without paying the lawful debts and charges thereon. This produced the statute of West. 2d, 13th, Ed. 1st, ch. 19, which enacted, that the Ordinary should pay the debts of the intestate, so far as his goods extended, in the same manner that executors were bound, in case the deceased had left a will. Yet the residuum, after the payment of his debts, remained still in his hands, to be applied to whatever purpose his conscience should approve. The flagrant abuses of this power produced the passage of the statute of 31st, Ed. 3d, sec. 1, ch. 11, which provides, that “in case where a man dies intestate, the Ordinary shall depute the next and most lawful friends of the dead person, intestate, to administer his goods, which deputies shall have an action to demand and receive, as executors, the debts due to the said person-intestate in the King’s Court, for to administer and dispend for the soul of the dead; and shall answer, also, in the King’s Court, to others to whom the said dead person was holden and bound, in the sanie manner as executors shall answer;' and they shall be accountable to the Ordinaries as executors are in the case of a testament, as well of the time past, as the time to come.” 1st Wil. Ex’rs. 236.
*465 This is the origin of administrators, as they are at present in England. They are officers of the Ordinary, appointed by him in pursuance of the statute, and their title and authority are derived exclusively from the Ecclesiastical Judge, by grants, denominated letters of administration.
This was doing much to secure a correct administration of the effects of deceased intestates. But something still remained to be done to make the security effectual; the administrator might waste the effects, and be unable to answer personally for them. This defect was remedied by the statutes of 21st Henry 8th, ch. 5, sec. 2, and 12th and 23d Charles 2d, ch. 10, sec. 1.
The statute of Henry directs the Ordinary to grant administration, taking security of him or them, to whom shall be made such commission. That of Charles, further provides, that “all Ordinaries, as well as Judges of the Prerogative Courts of Canterbury and York, as all other Ordinaries and Ecclesiastical Judges, having power to commit administration of the goods of persons dying intestate, shall and may, upon their respective granting and committing of administration of the goods of persons dying intestate after the 1st day of June, 1671, of the respective person or persons to whom any administration is to be committed, take sufficient bonds, with two or more able sureties, respect being had to the value of the estate, in the name of the Ordinary, with the condition in form and manner following, mutatis mutandis, viz,
“The condition of the above obligation is such, that if the within bounden A B, administrator of all and singular, the goods, chattels and credits of C D, deceased, do make, or cause to be made, a true and perfect inventory of all and singular, the goods, chattels and credits of said deceased, which .have or shall come to the hands, possession or knowledge of him the said A B, or into the hands or possession of any other person or persons for him, and the same so made, do exhibit, or cause to be exhibited in the registry of-- court, at or before the -day next ensuing, and the same goods, chattels and credits of tbr • id deceased, at the time of his death, which at any tim • . ' .or shall come to the hands or possession of the said AT- . mto the hands and possession of any other person or *466 persons for him, do well and truly administer according to law: And further, do make, or cause to be made, a true and just account of his said administration, at or before the - day of -, and all the rest and residue of the said goods, chattels and credits, which shall be found remaining upon said administrator’s account, the same being first examined and allowed by the Judge or Judges, for the time being, of the said court, shall deliver and pay unto said person or persons respectively, as the said Judge or Judges by his or their decree or sentence, pursuant to the true interest and meaning of this act, shall limit and appoint. And if it shall hereafter appear, that any last will and testament was made by the said deceased, and the executor or executors therein named, do exhibit the same into the said court, making request to have it allowed and approved accordingly, if the said A B, within bounden, being thereunto i*equired, do render and deliver the said letters of administration (approbation of said testament being first had and made) in the said court, then this obligation to be void and of none effect, or else to remain in full force and virtue.”
Such is the condition of the bonds of administrators in England at this day, and such is substantially also in this State.
But the Ecclesiastical Courts in England, to which the jurisdiction of the probate of wills also belonged, never had authority to require of an executor a bond for the due administration of the assets, 4th Burns Ecclesiastical Law, 176, but had the power at the common law to demand a bond from administrators with the will annexed, as well as administrators in cases of intestacy, with a condition to exhibit an inventory, and to administer truly, by paying debts and legacies, as appears from the case Folks vs. Dominique, 2d Strange, 1137, where it was adjudged, that a bond given durante minore estate, with the will annexed, upon such condition, though not coming within the statute of 21st Henry 8th, was good at the common law, as to the payment of legacies, that being a subject of Ecclesiastical jurisdiction. This statute of Henry 8th, only provides, in addition to cases of intestacy, that in case of an executor refusing to prove the will, the Ordinary shall take from him, to whom the administration is granted, security for.the true administra *467 tion of the goods, chattels and debts. 4th Burns’ Ecclesiastical Law, 204.
The duties of an executor and of an administrator, with the will annexed, are identically the same in respect to rendering an inventory and account to the Ordinary, and as to the payment of debts and legacies. Toller’s Law of Executors, 490. The engagements of the one and the other are the same, the executor being bound by his oath and the duty of his office, and the administrator, with .the will annexed, in addition to these obligations, by his bond. The oath of an executor as given by Toller, in his Law of Executors, 58, is, “that he will truly perform the will, by paying first, his testator’s debts, and then the legacies therein contained, as far as the goods, chattels and credits will extend, and the law charges him, and that he will make a true and perfect inventory of all the goods, chattels and credits, and exhibit the same in the registry of the Spiritual court, and render a just account thereof when lawfully required.”
■This all shows, that so far as the Ecclesiastical Courts were concerned, the duties of executors, administrators of intestates, and administrators with the will annexed, were the same, being confined to the disposition of the goods,-chattels and credits of their testator or intestate; the distribution of effects of the one being under the will, and of the other under the statutes of distribution: and the great and material difference between them is, that it is the duty of the court to take a bond from administrators, and that it has no power to exact one from executors. And the reason of this difference is obvious. In the case of wills, the testator appoints the executor; he is supposed to have full knowledge of his capacity for performing the duties of his office, and full confidence in him, and, therefore, there is no necessity for the Ordinary to require a bond— but not so in the case of administrators; there is no confidence reposed in them by the intestate; they are appointed by the Ordinary, who may have but little if any acquaintance with their fitness or responsibility for the office, and a bond with satisfactory security becomes necessary for the safety of the estate.
*468 The Ordinary having no power to exact a bond from an executor, if he attempt to do so, a writ of prohibition may be had, and if the bond be taken it is void. Lev. 233.
The Ecclesiastical Courts, then, having no power to exact or receive a bond from an executor for the payment of debts or .legacies arising out of personal estate, or the distribution of the residue of goods, chattels and credits, things peculiarly within their jurisdiction, it will follow a fortiori, that they have no power so to do, in cases excluded from their jurisdiction. This brings us to the second branch of the proposition under consideration; that is, what are the duties and responsibilities of an executor in executing a devise to sell real estate, and appropriate the proceeds either in the payment of debts or legacies.
This is a question of authority. In 14 Viner, 468, pl. 14, it is laid down, that “the proceeds of land given by the testator for the payment of debts and legacies, are not testamentary, and the executors are not bound to put such proceeds into the inventory. The Ecclesiastical Courts never had jurisdiction to enforce the payment of legacies out of the proceeds of land devised to be sold, that not being a testamentary subject.” Dyer, 151: Palm. 120: 2 Show. 50, pl. 36: Hob. 265. It was a mere trust, which at all times could only be enforced in a Court of Equity.
In the case of Clay et als, adm'rs, debonis non, vs. R. Willis, surviving ex'r, 8 Com. Law Rep. 103, it was held by the Court of King’s Bench, composed of Bayley, Holroyd and Best, that a devise of an equitable interest in land for the payment of debts, constituted the proceeds equitable assets, because the devise was in trust to pay debts. Bayley, Judge, said, upon this point: Lewen vs. Oakly, 2 Atkins 50, is precisely in point; that was followed by Silk vs. Prime, 1st Brown Cha. Ca. 138, in which all the cases were carefully considered, and Newton vs. Binnel, 1st Brown’s C. C. 134, to the same effect. And these cases have been since confirmed by Lord Chancellor Eldon, in Bailey vs. Eakins, 7 Vesey, 319, and Sheppard vs. Luwidge, 8 Vesey, 26. Upon these authorities and others referred to, the whole court declared themselves satisfied, that the assets sought to be recovered, were equitable and not legal, a. ’ ''w-suited *469 the plaintiff. In the case of Baker, ex’r, vs. Charles May and others, 17 Com. Law Rep. 426, a testator devised to his executors, their heirs and assigns, his lands upon trust, to sell the same, and directed that the money arising from the sale should be deemed part of his personal estate, and that it should be subject to the disposition made concerning his personal estate. He then directed his personal estate to be sold, and when the money arising from the sale of his personal and real estate should be collected, he disposed of it in the manner mentioned in the will, and among other dispositions, he bequeathed a legacy to A B: it was held.by tbe Court of King’s Bench, Lord Tenterden Ch. J., that the money arising from the sale of the real estate was equitable assets, and that the legatee could not maintain a suit in the Ecclesiastical Court to recover his legacy.
Mr. Williams in his Treatise upon Executors, p. 1033, says: “Hitherto the subject has been confined to the consideration of assets, such as may be reached at law, and such as a creditor, suing the executor in an action at law for a debt due from the testator, might bring forward in evidence to disprove the executor’s plea of plane adminístrame. But there are besides various, interests frequently forming part of the estate of an executor or administrator, which are not recognized as assets at law, and which, therefore, if administered at all, must be administered in equity. This latter portion of the estate in the hands of the executor or administrator is called equitable assets, in contradistinction to the former, which is called legal assets. In other words, legal assets are such as are liable to debts in the temporal courts, an’d legacies in the spiritual, by the course pf law. Equitable assets are such' as are liable only by the help of a Court of Equity.” Many other authorities to the same point, might be adduced, but these are amply sufficient to establish the propositions; that the lands devised to be sold for the payment of debts or legacies, are not administrate as legal assets; that the executor acts in relation to them as trustee, an'-’ notas executor of personal effects; that no suit can be br vgüt at law in relation thereto, nor in the Ecclesiastical Courts; that they are equitable assets, cognizable only in a *470 Court of Chancery; that the executor is not bound to return them in his inventory to the Court of Ordinary; that neither the oath of an executor, nor the oath and bond of an administrator, with the will annexed, extends to them, but are confined exclusively to those duties which devolve upon them purely in the character of executor or administrator, and which the Ordinary had the right to exact the performance of.
This brings us to the discussion of the 2d general proposition in relation to the subject under consideration, viz, what changes, if any, have been effected upon this subject, by the statutory provisions of the State of Tennessee?
Having no Ecclesiastical Courts in our country, it became necessary at an early period to appoint some other tribunal for the probate of wills, and the granting of letters of administration upon intestate estates. Accordingly it was enacted in the Colony of North Carolina in 1715, ch. 48, sec. 4 and 5, that no person shall enter upon the administration of any deceased person’s estate until he has obtained letters of administration, or letters testamentary, under the penalty of one hundred and twenty-five dollars; and that the Clerk of the County Court shall not sign and issue any letters testamentary without taking the executor’s oath for the performance of the will of the deceased, or letters of administration, without the administrator has taken the oath of the administrator, and also has given sufficient bond, with two or more able sureties, taken before the County Court, respect being had to the value of the estate, in the name of the Governor, for the time being, with the condition in the form and manner following, to be changed as the case may be. This condition, which it is unnecessary here tQ quote, is strictly in substance, and almost in form the same with that given by the statute of 22d and 23d of Charles the 2d, ch. 10, sec. 1, which we have already quoted verbatim. This statute of 1715, only changes the forum, and leaves the duties and responsibilities of executors and administrators precisely as they were after the passage of the statute of Charles. Various other statutes were enacted between that period and 1813, relating exclusively to the mode of administering and distributing the estates of deceased persons; but having noth *471 ing to do with the enlargement or creation of new sureties for the faithful performance of their duties by executors or administrators.
An act was passed in 1813, chap. 11, which provides that “all executors of every description shall, before they presume to enter upon the administration of any estate whatsoever, enter into bond and security in the same way that administrators are required to do, unless the testator shall otherwise expressly provide by his will, in which case no bond or surety shall be required, unless thereafter some creditor or creditors, or the representative or representatives of such testator shall apply to the court of the county, and suggest by petition that said executor or executors are wasting, or liltely to waste the estate of his.or their testator; whereupon it shall be lawful for such court, and they are hereby required to direct said executor or executors, on satisfactory proof being made to said court of the truth of said complaint, and proof also being made that ten days notice in writing has been given to said executor or executors, to enter into bond and security as other executors are by this act required to do; and in case said executor or executors shall fail to enter into bond with satisfactory security within three days after said order is made, said court shall proceed to appoint an administrator for said -estate, who shall forthwith proceed to call said executor or executors to account for said estate, who shall give bond and security and be qualified as other administrators are required by law, and shall dispose of said estate agreeably to the last will and testament of such deceased.”
This is the first and last act requiring executors to give bond and security: how is it to be construed?
We have seen that where a testator devises personalty for the payment of debts and legacies, and also lands to be sold by his executors for the same purposes, the executor acts .in a double capacity, viz, as administrator of the personal property and as trustee for the execution of powers under the will; that the assets in the one case are legal, recoverable by the debtors of the testator in a court of law and by the legatees in the ecclesiastical courts; that in the other they are equitable, and can *472 only be reached in a court of chancery. This principle has been in no wise changed in this State by legislative enactment; the only difference which, exists here in relation to the subject arising out of the fact that we have no ecclesiastical court, and therefore a legatee of personalty, if the executor do not assent to the legacy, is driven to pursue his remedy in a court of chancery, as well as a legatee of money arising from, the sale of land devised to be so sold by the executor.
Now the question is, when the legislature provided by the act of 1813 that executors should give bond, was it meant that they should give bond as the executors of the personalty, which constitutes legal assets only, or for that and the performance of the trust in relation to the laws created by the will also? We think there can be but little difficulty in saying that it is confined exclusively to the former.
The statute says, “All executors” — the word executors is a technical term, and applies to duties to be performed in relation to the goods and chattels, rights and credits of the testator, in contradistinction to that of trustee, which applies to duties to be performed in relation to real estate — “shall enter into bond and security in the same way that administrators are required to do.” We have seen in what way administrators were required by the act of 1715 to enter into bond and security, and that it is the same that is required by the act of 22nd and 23rd of Charles the Second; that is, a bond for the performance of duties in relation to personal property alone, “unless the testator shall otherwise direct; in which case no bond or security shall be required, unless upon a suggestion that the executor is wasting or likely to waste the estate.” Waste, or a devastavit as it is called, is a common law term, applicable only to legal assets, and therefore induces the belief that legal assets only were in the contemplation of the'legislature. “And in case said executor or executors shall fail to enter into bond, with satisfactory security, said court shall proceed to appoint an administrator for said estate, who shall forthwith call said executor to account for said estate.” How is it possible for the administrator thus appointed to call the executor to account for acts .--e by him in relation thereto, not as executor, but as a trustee w./ ' ’ ^ *473 will? How is it possible for an administrator thus appointed, to execute the trust, which is of a personal and confidential character, unless he be authorized by express enactment so to do? It must of necessity be, that the only things for which the executor can be called upon thus to account is in relation to the personalty. “And the administrator thus appointed shall give-bond and security, and be qualified as other administrators;” not as executors, if executors be required by the statute to give bond for the performance of the trust imposed upon them by the will, but as other administrators, for the personalty-only.
We then have the strange anomaly of an executor being removed because he has not given security for the performance of the trust, and an administrator appointed to execute it, who has likewise given no security — an absurdity too glaring to be entertained for a moment.
We therefore hold, that an executor in the State of Tennessee is only bound to give security as administrators are, for the faithful performance of his duty in administering the legal effects of his testator’s estate; that the county court has no more power to exact from him a bond for the discharge of his duties as a trustee in selling and disposing of lands under the will, than the ecclesiastical court in England had, and that any bond taken for that purpose is to all intents and purposes null and void. It follows, that if the .sureties of the executors in the case now under consideration have, by the terms of their bond, (which we do not so consider,) made themselves responsible for ths execution of the trust of the will in relation to the real estate devised to be sold, it has created no legal obligation upon them and they are not bound by it, but are discharged therefrom both in law and equity.
It follows also, as a corollary, that there is no mutual liability created by the bond, as between executors in relation to the trust. But it is contended on behalf of those interested in the execution of the trust, that from its nature and the extent to which it has been partly executed, the executors are mutually1 responsible for its completion; or, in other words, that inasmuch *474 as the executors have joined in the sale of the real, estate devised to them to be sold under the trust in the will, they are mutually bound to see that the money, when collected, shall be paid to those entitled to it under the will, and of this opinion is the court.
The question came up for consideration in the case of Deaderick et als. vs. Cantrell et als. 10 Yerg. 264. That was a case of lands devised to be sold by his executor, and the proceeds bequeathed to different persons, payable as they should arrive respectively at the age of twenty-one years, and directing the executors in the meantime to loan out the money to the best advantage. The lands were sold, and the money collected by one of the executors, and he, instead of loaning it out as directed, appropriated it to his own use. Upon a bill to charge his co-executor for the breach of trust, this court,- among other things applicable to the case, but not to this, said: “It is admitted in the case under consideration, that the money was not jointly received, and that no joint receipt was executed: but it is contended, that the money was paid to Cantrell the executor, who consumed the fund, by the act, direction or ágreement of Wharton his co-executor, and under such circumstances as must make him liable for its waste; and, we think, succes-fully.
This is not like ordinary case of a fund outstanding, which has to be received by trustees; but is a case in which property was devised to them to be sold, the notes for which were taken payable to both trustees. Upon the payment of the money, no receipts were necessary; the notes were taken up by the makers, and being in the name of both, it seems to us to constitute as strong, if not a stronger case, than that of a joint receipt.
We do not hesitate to say, that the notes could not have come exclusively into the hands of Cantrell, and the money been collected on them by him without the act, direction and agreement of Wharton;” and the court, upon that ground as well as others, held Wharton responsible for the maladministration of his co-executor Cantrell.
So in the case now under consideration, the lands were de *475 vised to be sold by the executors upon the best advantage; no terms of sale are specified, no time fixed at which the trust is to be completed by the payment of the money to those entitled to receive it; but these matters are left entirely to the discretion of the executors. They proved the will, undertook the execu. tion of the trust, sold the land — this they were compelled by law to do jointly, and it follows, of course, if money were received in payment, it must have been received jointly; if notes, they must have been executed to them jointly, and the payment could not have been received by one individually, without the act, direction and agreement of-tne other. In either case, an abuse of the trust by one, makes the other responsible to the cestui qwe trust, upon the principles as laid down in the case of Deaderick and others against Cantrell and others.
Upon the whole view of this case, then, we hold that the executors are jointly responsible for .the performance of the trust, and for any abuses that may have arisen in the progress of its execution; that they are jointly responsible by the bond for any maladministration of the personal estate of their testator in the payment of legacies under the will, or in making distribution of any portion of it that may not have been specifically bequeathed, and that the securities in the bond are responsible for them thus far and no farther; and we decree accordingly.